SEAN FABRE *VS.* AMALIA WALTON & another.[1]

Suffolk. December 3, 2001. - April 12, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Practice, Civil,* Interlocutory appeal, Attorney's fees, Costs. *Abuse Prevention. Abuse of Process.*

This court recognized a right to interlocutory review when a trial judge has denied a special motion to dismiss pursuant to G. L. c. 231, § 59H, the anti-SLAPP statute, and it concluded that, for purposes of certainty, uniformity of treatment of litigants, and the development of a consistent body of law, such interlocutory appeal should proceed to the Appeals Court pursuant to G. L. c. 231, § 118, regardless of the court in which the SLAPP suit was brought. [520-522]

A District Court judge erred in denying a party's special motion to dismiss brought under the anti-SLAPP statute, G. L. c. 231, § 59H, where the party's filing of a complaint for an abuse protection order and the submission of supporting affidavits were petitioning activities encompassed within the protection afforded by § 59H, and where the nonmoving party failed to demonstrate by a preponderance of the evidence that the moving party's petitioning activity was devoid of any reasonable factual support or any arguable basis in law. [522-525]

A party who requested an award of costs and reasonable attorney's fees in her special motion to dismiss brought under the anti-SLAPP statute, G. L. c. 231, § 59H, in the District Court, and who renewed her request in her G. L. c. 211, § 3, petition was entitled to costs and reasonable attorney's fees related to the District Court proceedings in light of this court's reversal of a District Court judge's denial of her motion; further, this court allowed her request for costs and attorney's fees related to this appeal. [525]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on April 26, 2000.

A special motion to dismiss was heard by *Severlin B. Singleton,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cowin,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her.

[1]The Attorney General, intervener.

*John P. Fulginiti* (*Ann Wagner* with him) for the defendant.

*Bruce T. Macdonald* for the plaintiff.

*William J. Meade*, Assistant Attorney General, for the intervener.

The following submitted briefs for amici curiae:

*Sarah R. Wunsch* for American Civil Liberties Union of Massachusetts.

*Wendy J. Murphy, Marilyn Lee-Tom, & Allan Rodgers* for Jane Doe, Inc., & others.

*Pauline Quirion & Jamie Ann Sabino* for The Women's Bar Association of Massachusetts & another.

CORDY, J. Amalia Walton sought and obtained an abuse protection order against Sean Fabre. In response, Fabre filed a civil complaint against Walton asserting a single claim of abuse of process arising out of her application for the abuse protection order. Walton filed an unsuccessful special motion to dismiss pursuant to G. L. c. 231, § 59H (commonly known as the anti-SLAPP statute), and appealed the denial of that motion to the county court pursuant to G. L. c. 211, § 3.

We decide two issues: first, whether there is a right to interlocutory appellate review when a trial judge denies a special motion to dismiss pursuant to the anti-SLAPP statute and second, whether the motion judge erred in denying Walton's special motion to dismiss.

1. *Background.*

Walton and Fabre dated for approximately three years. At the end of their relationship, Walton filed a complaint against Fabre in the Dedham Division of the District Court Department for protection from abuse pursuant to G. L. c. 209A. The complaint was accompanied by an affidavit in which she described Fabre's behavior toward her. The District Court judge who reviewed the complaint ex parte found that Fabre's behavior toward Walton was "controlling and oppressive" and that Walton was "visibly very frightened." Based on these findings, the judge issued a temporary abuse prevention order.

A hearing to extend the temporary order was held on April 10, 2000. Fabre and Walton were each represented by counsel and both testified. Fabre's roommate also testified, and Fabre's

attorney attempted to elicit testimony from him that a friend of
Walton told him that Walton told her that she had applied for
the abuse prevention order so that it would appear on Fabre's
future job applications and necessitate his explaining it to future
employers. The judge excluded this testimony as hearsay. After
the hearing, the judge ruled that Walton had demonstrated by a
preponderance of the evidence that she required the continued
protection of the court, and extended the restraining order for
six months.[2]

Fabre did not appeal from the order, but filed a civil complaint
in the Cambridge Division of the District Court Department
claiming abuse of process against Walton. In his complaint,
Fabre asserted that Walton's affidavit and her testimony at the
209A hearing were false, that she had not been abused, and that
her filing of the 209A complaint was for the ulterior purpose of
causing him "future embarrassment and repercussions in his
employment, his career choices, and otherwise."[3]

Walton filed a special motion to dismiss Fabre's complaint
pursuant to the anti-SLAPP statute.[4] The judge denied her mo-
tion without findings or explanation. Walton filed a motion for

---

[2]The judge concluded the hearing by finding that: "[B]ased on the credible
evidence and the reasonable inferences that I draw from that evidence, and I
remind you that the only issue before me this morning was whether or not
[the plaintiff] had demonstrated by a preponderance of the evidence that she
requires the continued protection of this Court in the form of a restraining
order. Based on the credible evidence and reasonable inferences that I draw
from that evidence, I am going to extend this restraining order for a period of
six months."

[3]The elements of the tort of abuse of process are: "(1) 'process' was used;
(2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Vittands* v.
*Sudduth*, 49 Mass. App. Ct. 401, 406 (2000), quoting *Kelley* v. *Stop & Shop
Cos.*, 26 Mass. App. Ct. 557, 558 (1988). "More specifically, abuse of process
has been described as a 'form of coercion to obtain a collateral advantage, not
properly involved in the proceeding itself, such as the surrender of property or
the payment of money.' " *Vittands* v. *Sudduth, supra,* quoting *Cohen* v. *Hur-
ley*, 20 Mass. App. Ct. 439, 442 (1985). "The subsequent misuse of the
process, though properly obtained, constitutes the misconduct for which li-
ability is imposed . . . ." *Kelley* v. *Stop & Shop Cos., supra,* quoting Restate-
ment (Second) of Torts § 682 comment a (1977).

[4]The motion was captioned as both a motion to dismiss pursuant to Mass.
R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and a special motion to dismiss
pursuant to the anti-SLAPP statute.

reconsideration, or in the alternative, for a report of the ruling to the Appellate Division of the District Court Department for interlocutory review,[5] both of which were also denied. Walton then petitioned the county court pursuant to G. L. c. 211, § 3, seeking relief. After a hearing, a single justice reserved and reported the case to the full bench and stayed the District Court proceedings.

2. *Discussion.*

In enacting the anti-SLAPP statute, "the Legislature intended to immunize parties from claims 'based on' their petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 167 (1998). Accordingly, the statute provides broad protections for individuals who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits.[6] *Id.* at 161-162. In this regard, they are similar in purpose to the protections afforded public officials by the doctrine of governmental immunity.

The protections afforded by G. L. c. 231, § 59H, include a procedural remedy that permits the defendant in a SLAPP suit to file a "special" motion to dismiss early in the litigation, which a judge shall grant, "unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." They also include the automatic stay of discovery on the filing of a special motion to dismiss.

*Right to an interlocutory appeal.* "It is settled that absent 'special authorization,' . . . 'an appellate court will reject attempts to obtain piecemeal review of trial rulings that do not

---

[5]Rule 5 of the Dist./Mun. Cts. Rules for Appellate Division Appeal (2001) provides that: "a judge may, in his or her discretion, report a judgment, interlocutory or other ruling, finding or decision for determination by the Appellate Division."

[6]"The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161 (1998), citing *Wilcox* v. *Superior Court*, 27 Cal. App. 4th 809, 816-817 (1994).

represent final dispositions on the merits.' " *Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass. 563, 565 (1995), quoting *Cappadona* v. *Riverside 400 Function Room, Inc.*, 372 Mass. 167, 169 (1977), and *R.J.A.* v. *K.A.V.*, 34 Mass. App. Ct. 369, 372 (1993). The policy underlying this rule is that "a party ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay and often waste judicial effort in deciding questions that will turn out to be unimportant." *Borman* v. *Borman*, 378 Mass. 775, 779 (1979), quoting *Vincent* v. *Plecker*, 319 Mass. 560, 563 n.1 (1946). Consistent with this rule, the denial of a motion to dismiss is ordinarily not an appealable order. See *Bean* v. *399 Boylston St., Inc.*, 335 Mass. 595, 596 (1957).

There are limited exceptions to this rule, one of which is the doctrine of present execution. Under that doctrine, immediate appeal of an interlocutory order is allowed if the order will interfere with rights in a way that cannot be remedied on appeal from the final judgment. See *Mitchell* v. *Forsyth*, 472 U.S. 511, 524-525 (1985). See also *Borman* v. *Borman, supra* at 779-782. Interlocutory orders relating to claims of governmental immunity from suit are appealable pursuant to the doctrine of present execution because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial" (emphasis in original). *Mitchell* v. *Forsyth, supra* at 526. See *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999) ("The right to immunity from suit would be 'lost forever' if an order denying it were not appealable until the close of litigation . . .").

As in the governmental immunity context, the denial of a special motion to dismiss interferes with rights in a way that cannot be remedied on appeal from the final judgment. The protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process. Accordingly, we hold that there is a right to interlocutory appel-

late review from the denial of a special motion to dismiss filed pursuant to the anti-SLAPP statute.[7]

Having established a right to interlocutory review, we next turn to the question where that review should occur. SLAPP suits may originate in different venues with different avenues of appeal. In the present case, the suit was brought in the District Court where the route for the appeal of interlocutory orders is less certain than the route available from other courts. Compare Rule 5 of the Dist./Mun. Cts. Rules for Appellate Division Appeal (2001) with G. L. c. 231, § 118. "This court has 'wide discretion in devising various procedures for the course of appeals in different classes of cases.' " *Zullo* v. *Goguen*, 423 Mass. 679, 681 (1996), quoting *Flynn* v. *Warner*, 421 Mass. 1002, 1003 (1995). In the exercise of this discretion, we conclude that, for purposes of certainty, uniformity of treatment of litigants, and the development of a consistent body of law, an interlocutory appeal from the denial of a special motion to dismiss should proceed to the Appeals Court, regardless of the court in which the SLAPP suit was brought. See *Zullo* v. *Goguen*, *supra* at 681-682.

*Walton's special motion to dismiss.* After reviewing the judge's denial of Walton's special motion to dismiss,[8] we conclude that its denial was erroneous. *McLarnon* v. *Jokisch*, 431 Mass. 343, 348 (2000).

The party filing a special motion to dismiss has the initial burden of demonstrating that the activity at issue is "petitioning" activity within the purview of the anti-SLAPP statute and that the claims in the litigation "are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 167-168 (1998). The petitioner

---

[7]To the extent our decision is inconsistent with the Appeals Court decision in *Kalogianis* v. *Leone*, 50 Mass. App. Ct. 910, 911 (2000), that decision is overruled.

[8]To prevent further litigation, which would create an additional burden on the petitioner, we review the denial of the motion rather than remanding it to the Appeals Court.

has met these requirements. The filing of a complaint for an abuse protection order and the submission of supporting affidavits are petitioning activities encompassed within the protection afforded by G. L. c. 231, § 59H. See *McLarnon* v. *Jokisch*, *supra* at 347. In addition, a cursory review of Fabre's complaint, which simply recounts and complains of Walton's conduct in bringing and testifying at the 209A proceedings, demonstrates that the claim against Walton is based on the exercise of her right to petition.

However, Fabre asserts that it is not Walton's petitioning activity that is the subject of his claim, but rather her "ulterior motive" in pursuing the 209A complaint. He asserts that "there is evidence that [Walton] utilized the abuse prevention process for an ulterior purpose," thereby giving rise to an abuse of process claim that is not "based on" Walton's petitioning activities alone. In support of his position, Fabre submitted two affidavits in opposition to Walton's motion to dismiss. In one of these affidavits, Fabre denies that he ever physically abused, threatened, harassed, or gave Walton reason to fear him, and further states that:

> "[Walton's friend] came over to my apartment that day to meet [Fabre's roommate] for lunch. She didn't want [Walton] to know about her visit and told me in front of [the roommate]: '[Fabre], [Walton] told me she's not doing this because she is scared or feels threatened. She said she's doing this so that every time you have a job interview you have this against you.' "

In the other affidavit, his roommate confirms Fabre's assertion:

> "The next afternoon [Walton's friend] came over to my apartment because we had planned to have lunch. [Fabre] had just returned from France and he and [Walton's friend] talked. I was present for most of that conversation and heard her say something to the effect that [Walton] had told her she was not filing for the restraining order because she was scared of [Fabre] but was doing it so that there

would be a permanent mark on his record that would show up on future job applications."[9]

A special motion to dismiss will not succeed against a "meritorious claim[] with a *substantial* basis other than or in addition to the petitioning activities implicated" (emphasis added). *Duracraft Corp.* v. *Holmes Prods. Corp., supra* at 167. Fabre's claim does not meet this test. Notwithstanding his allegations concerning the motive behind Walton's conduct, the fact remains that the *only* conduct complained of is Walton's petitioning activity.[10] There is no "substantial basis" for the claim other than that petitioning activity.

Having established that Fabre's complaint is "based on" Walton's petitioning activity, the burden shifts to Fabre to demonstrate by a preponderance of the evidence that Walton's petitioning activity was devoid of any reasonable factual support or any arguable basis in law. G. L. c. 231, § 59H. *Baker* v. *Parsons,* 434 Mass. 543, 553-554 (2001).

In determining whether the petitioning activity is devoid of any reasonable factual support or arguable basis in law, the statute directs the judge to consider "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." G. L. c. 231, § 59H. However, in light of the findings and the final judgment entered in the contested 209A proceedings, Fabre's pleadings and affidavits are insufficient to sustain his burden. In the absence of a successful appeal or collateral attack on the final judgment in favor of Walton, that judgment is conclusive evidence that the petitioning activity was not devoid of any reasonable factual support or arguable basis in law. The judge who extended the restraining order found, after an evidentiary hearing, that the requisites for such an order had been established by a preponderance of the evidence. By definition, something that has been

---

[9]Walton also submitted an affidavit, in which she averred that her friend told her that she never said what Fabre and Fabre's roommate claim in their affidavits.

[10]Fabre does not claim that Walton made subsequent use of the 209A order to coerce or obtain a collateral advantage or for some other illegitimate purpose.

established by a preponderance of the evidence cannot be devoid of any reasonable factual support or arguable basis in law.[11]

The motion judge's denial of Walton's special motion to dismiss in these circumstances was error.

3. *Costs and Attorney's Fees.*

The anti-SLAPP statute requires the payment of attorney's fees and costs if the judge allows a special motion to dismiss. G. L. c. 231, § 59H. "The purpose of the statute is to reimburse persons for costs and attorney's fees if a judge determines that the statute is applicable and allows their motion to dismiss." *McLarnon* v. *Jokisch*, 431 Mass. 343, 350 (2000).

Walton included a request for an award of costs and reasonable attorney's fees in her special motion to dismiss. Walton renewed her request for an award of costs and reasonable attorney's fees in her G. L. c. 211, § 3, petition. In light of our reversal of the denial of her motion, Walton is entitled to costs and reasonable attorney's fees related to the District Court proceedings. G. L. c. 231, § 59H. She also requested costs and attorney's fees related to this appeal. "This is the appropriate procedure for a party seeking costs and fees for appellate work," *McLarnon* v. *Jokisch*, *supra* at 350, and her request is allowed.

4. *Conclusion.*

The judgment of the District Court is reversed, and the case is remanded for the entry of judgment consistent with this opinion and for the award of costs and reasonable attorney's fees as required by G. L. c. 231, § 59H. In addition, Walton may apply to the single justice for an award of appropriate attorney's fees and costs in connection with the appeal. See *McLarnan* v. *Jokisch*, *supra*.

*So ordered.*

---

[11]Fabre could have appealed from the 209A order to the Appeals Court, see, e.g., *Zullo* v. *Goguen*, 423 Mass. 679, 682 (1996), or if he had evidence that Walton committed fraud, made misrepresentations to the court, or engaged in other misconduct during the 209A proceedings (which is the essence of his claim), he could have filed a motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), which "sets forth a comprehensive framework for obtaining relief from a final judgment or order, balancing the competing needs for finality and flexibility to be certain that justice is done in light of all the facts." *Sahin* v. *Sahin*, 435 Mass. 396, 399-400 (2001). Fabre did neither.